IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| KINGVISION PAY-PER-VIEW, LTD., a Delaware corporation, | ) ) ) |
| Plaintiff, | ) Case No. CV05-1064-HU |
| vs. | ) ) FINDINGS AND ) RECOMMENDATION |
| WOK'S UP RESTAURANT, INC., et al., | ) ) ) |
| Defendants. | ) ) |

Michael A. Cox
Spaulding Cox & Schaeffer
621 S.W. Morrison Street, Suite 140
Portland, Oregon 97205
    Attorney for plaintiff

Michael M. Ratoza
Garvey Schubert Barer
121 S.W. Morrison Street, Suite 1100
Portland, Oregon 97204
    Attorney for defendants

1   -  FINDINGS AND RECOMMENDATION

HUBEL, Magistrate Judge:

Plaintiff, the owner of commercial rights in the transmission of closed-circuit boxing broadcasts, brings this action against defendants for violation of the federal Communications Act of 1934, 47 U.S.C. §§ 553 and 605, as amended by the Cable Communications Policy Act of 1984, (the "Anti-Piracy" provisions).[1] Plaintiff alleges that defendants, without

---

[1] 47 U.S.C. § 553 provides, in relevant part, as follows:
**§ 553. Unauthorized reception of cable service**
**(a) Unauthorized interception or receipt or assistance in intercepting or receiving service; "assist in intercepting or receiving" defined**
   **(1)** No person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so ...
                    ***
**(c) Civil action in district court; injunctions; damages; attorney's fees and costs; regulation by States or franchising authorities**
   **(1)** Any person aggrieved by any violation of subsection (a)(1) of this section may bring a civil action in a United States district court or in any other court of competent jurisdiction.
   **(2)** The court may--
      **(A)** grant temporary and final injunctions ...
      **(B)** award damages as described in paragraph (3); and
      **(C)** direct the recovery of full costs, including awarding reasonable attorneys' fees to any aggrieved party who prevails.
**§ 605. Unauthorized publication or use of communications**
   **(a) Practices prohibited**
      Except as authorized by chapter 119, Title 18, no person receiving, assisting in receiving, transmitting, or assisting in transmitting, any interstate or foreign communication by wire or radio shall divulge or publish the existence, contents, substance, purport, effect, or meaning

authorization, intercepted and exhibited one of Kingvision's

---

> thereof, except through authorized channels of transmission or reception, (1) to any person other than the addressee, his agent, or attorney, (2) to a person employed or authorized to forward such communication to its destination, (3) to proper accounting or distributing officers of the various communicating centers over which the communication may be passed, (4) to the master of a ship under whom he is serving, (5) in response to a subpoena issued by a court of competent jurisdiction, or (6) on demand of other lawful authority. No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto. No person having received any intercepted radio communication or having become acquainted with the contents, substance, purport, effect, or meaning of such communication (or any part thereof) knowing that such communication was intercepted, shall divulge or publish the existence, contents, substance, purport, effect, or meaning of such communication (or any part thereof) or use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.
> ***
> **(e) Penalties; civil actions; remedies; attorney's fees and costs; computation of damages; regulation by State and local authorities**
> ***
> **(3)(A)** Any person aggrieved by any violation of subsection (a) of this section [may bring a civil action in a United States district court or any other court of competent jurisdiction for injunctive relief, damages, and attorney's fees and costs].

3  - FINDINGS AND RECOMMENDATION

closed-circuit broadcasts. Defendants move to dismiss on the ground that the action is untimely.

The Communications Act contains no limitations period applicable to private suits brought by non-carriers for violations of anti-piracy provisions. The issue presented by this motion is which statute of limitations should be imported, from either state or federal law, to govern this action. Courts addressing the issue have come up with a range of solutions.

Defendants urge the court to follow a recent district court case, In re Cases Filed by DirecTV, 344 F. Supp.2d 647 (D. Ariz. Nov. 9, 2004), in which the court borrowed the two-year statute of limitations of the federal Electronic Communications Privacy Act (ECPA), 18 U.S.C. § 2510-2521, for claims under § 605. Plaintiff asserts that the applicable limitations period is either the three-year period provided by the federal Copyright Act, 17 U.S.C. § 507, as held by the Fifth Circuit in Prostar v. Massachi, 239 F.3d 669 (5th Cir. 2001), *followed outside the 5th Circuit by* Time-Warner Cable Nat'l Div. v. Bubacz, 198 F. Supp.2d 800 (N.D. W. Va. 2001), or the six-year limitations period provided by Or. Rev. Stat. § 12.080. In Kingvision Pay-Per-View Corp. Ltd. v. 898 Belmont, Inc., 366 F.3d 217 (3d Cir. 2004), *followed outside the Third Circuit by* DirecTV, Inc. v. Wright, 350 F. Supp.2d 1048 (N.D. Ga. 2004), the court held that the applicable limitations period was the one provided by the state's

4   - FINDINGS AND RECOMMENDATION

cable piracy statute.

The parties agree, for purposes of this motion, that plaintiff filed these actions more than two years but less than three years after the accrual of the claims alleged in the complaint.

### Standard

Under Fed. R. Civ. P. 12(b)(6), dismissal for failure to state a claim is proper only when it appears to a certainty that the plaintiff can prove no set of facts in support of its claim that would entitle it to relief. Conley v. Gibson, 355 U.S. 41, 45 (1957); Alliedsignal, Inc. v. City of Phoenix, 182 F.3d 692, 695 (9th Cir. 1999). For the purpose of the motion to dismiss, the complaint is liberally construed in favor of the plaintiff, and its allegations are taken as true. Loyd v. Paine Webber, Inc., 208 F.3d 755, 759 (9th Cir. 2000).

### Discussion

As a general rule, where a federal statute fails to provide any limitations period for a new cause of action, there is a presumption that state law will be the source of the missing limitations period. North Star Steel Co. v. Thomas, 515 U.S. 29, 33-34 (1995). In seeking the right state rule to apply, courts look to the state statute "most closely analogous" to the federal Act. Id. at 34. There are two exceptions to this rule. First, 28 U.S.C. § 1658 provides a general, four-year limitations period

5   - FINDINGS AND RECOMMENDATION

for federal statutes passed after December 1, 1990, that do not contain their own limitations period. Id. at 34. That exception is inapplicable here, since the Communications Act was passed in 1934, and the Cable Communications Policy Act amendments were passed in 1984. The second exception applies when the state limitations periods with any claim of relevance would frustrate or interfere with the implementation of national policies, or be at odds with the purpose or operation of federal substantive law. The court then looks for a period that might be provided by analogous federal law, "more in harmony with the objectives of the immediate cause of action." Id. The Supreme Court has characterized this latter exception as a "closely circumscribed" and "narrow" one. Id.

> [R]eference to federal law is the exception, and we decline to follow a state limitations period only when a rule from elsewhere in federal law clearly provides a closer analogy than available state statutes, and when the federal policies at stake and the practicalities of litigation make that rule a significantly more appropriate vehicle for interstitial lawmaking.

Id. at 35.

Plaintiff argues that the court should adopt the reasoning of the Belmont case and apply the six-year limitations period provided by Oregon's Cable Services Act, Or. Rev. Stat. § 12.080. In Belmont, the court held that the applicable limitations period was the one provided by the state's cable piracy statute.

6  - FINDINGS AND RECOMMENDATION

Belmont's facts were similar to those of this case: it was alleged that defendants intercepted and broadcast, without Kingvision's authorization, the Evander Holyfield/Lennox Lewis championship boxing match and its "associated undercard bouts" to its bar patrons, through the use of an illegal decoding device.

In Belmont, the court found no need to apply the exception to the presumption in favor of a limitations period borrowed from state law and applied the limitations period provided by the Pennsylvania cable piracy statute. The court noted that the Supreme Court has articulated three points to consider in determining whether, for uniformity purposes, a court should adopt a federal, rather than a state, limitations period. 366 F.3d at 222. First, a general preference for uniformity, even if to avoid forum shopping, is an insufficient reason to apply the limitations period of the closest federal analogue. Id., *citing* North Star, 515 U.S. at 36. Second, the desire to unify the limitations periods of federal laws with similar purposes is not a sufficient reason to adopt federal limitations periods. Id., *citing* Reed v. United Transp. Union, 488 U.S. 319, 327 (1989). Third, the court noted the difference between uniformity in construing the substantive elements of a statute in order to characterize a claim for statute of limitations purposes, and the next step of determining what limitations periods to adopt for a particular type of claim. The Belmont court noted that in Wilson

7   - FINDINGS AND RECOMMENDATION

v. Garcia, 471 U.S. 261 (1985), the Supreme Court held that § 1983 claims should be characterized uniformly as state tort actions, but then determined that the length of the limitations period was to be governed by state tort law. 471 U.S. at 268-71, 275-80. Thus, uniformity was an issue only in the characterization of the claim--the court did not find that the limitations periods themselves needed to be uniform.

The Belmont court found guidance for the circumstances under which the Court applies a federal limitations period in Agency Holding Corp. v. Malley-Duff & Associates, Inc., 483 U.S. 143 (1987). In Malley-Duff, the Court held that the four year limitations period for Clayton Act civil enforcement actions applied to RICO actions. 483 U.S. at 155-56. The Court explained that uniformity is a great concern for RICO civil actions, since by statute such actions require both a nexus to interstate or foreign commerce and a pattern of racketeering. Id. at 153. Racketeering itself often involves interstate transactions, since it may include any of nine state law felonies and over 25 federal statutes. Id. at 149.

In North Star, the Court distinguished Malley-Duff on the ground that the event in North Star was a single event, a plant closing, that was "relatively simple and narrow in its scope." 515 U.S. at 37. The RICO claim in Malley-Duff, however, required a nexus to interstate or foreign commerce as a jurisdictional

8   - FINDINGS AND RECOMMENDATION

element and an allegation of a pattern of racketeering, which is likely to include interstate transactions. Malley-Duff, 483 U.S. at 153-54.

In Belmont, the court acknowledged that cable piracy, like RICO claims, may involve widespread and multiple wrongful actions such as theft, tortious interference with prospective advantage, misrepresentation, civil conspiracy, and unjust enrichment, but "multiple, interstate claims are not required as an element of the cause of action under §§ 553 or 605 of the Cable Act, nor are they at stake in this case." 366 F.3d at 223.

The Belmont court declined to follow the holding in Prostar that the applicable limitations period was that of the Copyright Act. 366 F.3d at 223. Although the facts in Belmont were parallel to those of Prostar, the court found Prostar distinguishable on the ground that the applicable state law, that for general conversion, was not as close an analogue to the Communications Act as the Pennsylvania piracy statutes. Id. Further, the Belmont court thought the Prostar court conflated, or at least failed to distinguish between, the need for uniformity in construing the type of of action for determining the statute of limitations and uniformity in the length of the limitations periods adopted, the distinction made clear in Wilson, 471 U.S. at 268-71. As the court said,

> The Prostar court states that the Communications Act

9   - FINDINGS AND RECOMMENDATION

> requires uniform enforcement via the application of a federal limitations period because "issues facing the cable industry [are] national in scope." [citations omitted] This conclusion, however, simply does not follow. The national concerns of the cable industry are relevant only insofar as they are embodied in the [Communications Act]. As a threshold matter, they are used to characterize the claim for which a statute of limitations period is then to be applied. The violations of the Cable Act, however, are particular acts which are pursued in the locations where they occur--as was done in the present case. The localized violations--even if multiple--are very different from the interstate activity involved in RICO claims.

366 F.3d at 224.

The Belmont court concluded that the Pennsylvania piracy statutes' provisions mirrored those of the Communications Act, because they made punishable by fine or imprisonment the theft of certain wire services and telecommunications services, and allowed an aggrieved service provider equitable or declaratory relief, compensatory and punitive damages, costs, and attorney's fees.

In Prostar, as in this case and in Belmont, the licensee of the sales rights for transmission of boxing broadcasts brought an action alleging that the defendant's establishment intercepted and exhibited the broadcast, in violation of the Communications Act. The Fifth Circuit began by "characteriz[ing] the essence" of the action, concluding that the legislative history associated with the Communications Act and its amendments revealed that "one of Congress's principal objectives was to discourage theft of

10 - FINDINGS AND RECOMMENDATION

cable services." 239 F.3d at 673. To that end, Congress "articulated a variety of penalties and remedies to 'protect the revenue of television cable companies from unauthorized reception of their transmissions.'" [citation omitted].

The parties in Prostar suggested three possible appropriate state-law analogues to the Communications Act provisions at issue: the statute governing delictual (tort) actions; a statute outlining standards applicable to personal actions; and the statute providing for "recovery of compensation." Defendants argued that the one-year limitations period governing tort actions was the most appropriate, because cable theft is analogous to the tort of conversion.

The court agreed that conversion was the closest analogy under the three Louisiana statutes, but concluded that the conversion statute was "at odds with" the Communications Act's purpose or operation, and frustrated the intent behind it, because "the cable industry is a distinctly national (and international enterprise." 239 F.3d at 676. The court noted legislative history indicating that the issues facing the cable industry were national in scope and "underscored the need for a correspondingly national enforcement regime." Id. The Prostar court concluded that the posture of the case affirmed the "multistate nature" of actions brought under the Communications Act, because plaintiff was a Texas corporation suing for signal

11 - FINDINGS AND RECOMMENDATION

piracy alleged to have taken place in a Louisiana establishment. Id. "More generally, cable broadcasts are routinely conducted on a national and international scale. Cable piracy consequently differs from many of the cases where courts have applied state-law limitations periods, as these typically involved isolated events." Id. [noting, *inter alia,* the single plant closing at issue in North Star.]

> The Prostar court explained,
>
> We find that application of Louisiana conversion law to cable piracy claims brought under 47 U.S.C. §§ 553 and 605 would undermine the implementation of the [Communications Act]. The application of state conversion law in each of the fifty states would result in widely varying limitations periods. As Prostar notes, cable companies engage in multistate activities and would consequently be required to "make fifty separate decisions" in their efforts to investigate and pursue cable piracy. A single federal standard would eliminate these practical difficulties ...

Id. at 676.

The court concluded that the Copyright Act provided the appropriate federal-law analogue to the claims asserted, and in fact provided a closer fit than conversion. 239 F.3d at 677. The court observed that the Copyright Act and the Communications Act both protected proprietary rights in the context of cable transmissions, and that the Copyright Act's prohibition on infringement encompasses the unauthorized performance or display of motion pictures and other audiovisual works, as well as

explicitly prohibiting infringement in the context of secondary transmissions by cable systems.

A third approach was used in In re DirecTV, also a case in which a satellite television broadcaster brought actions against the defendants for the alleged unlawful interception of satellite programming. Plaintiff alleged that defendants knowingly and actively programmed and reprogrammed DirecTV Access Cards and designed electronic systems for use in surreptitiously obtaining DirectTV satellite programming.

The defendants argued that Arizona's cable and satellite theft statute was analogous to 47 U.S.C. § 605, so that the court should apply its one-year statute of limitations. Plaintiff argued that Arizona's limitations period should not be applied because Arizona's piracy statute did not mirror the Communications Act. Plaintiff urged the court to apply the three-year statute of limitations in the Copyright Act, as was done in the Prostar case.

The DirecTV court considered both the Belmont and Prostar cases. It agreed with the Prostar court, that borrowing a state law statute of limitations was unwarranted on the basis of Malley-Duff:

> Given the multi-state nature of actions under the [Communications Act], and specifically under 47 U.S.C. § 605, the court's reasoning in [Malley-Duff] is applicable in this case. As in civil RICO claims, where "some nexus to interstate or foreign commerce

13 - FINDINGS AND RECOMMENDATION

> is required as a jurisdictional element," id. at 153-54, "[t]he Supreme Court has specifically held that [47 U.S.C. § 605] applies to purely inter-state communications." Pavlak v. Church, 727 F.2d 1425, 1427 (9th Cir. 1984)[other citations omitted]. Furthermore, like civil RICO claims, piracy claims under 47 U.S.C. § 605 commonly involve multi-state transactions. ... Moreover, satellite programming is generally transmitted on a national and international scale. ... Here, as in [Malley-Duff], the multi-state nature of piracy actions under 47 U.S.C. § 605 "indicates the desirability of a uniform federal statute of limitations." [citing Malley-Duff, 483 U.S. at 154].

The court concluded that the most analogous federal statute was the ECPA, with its two-year statute of limitations, because both the ECPA and the Communications Act prohibited the interception of electronic and satellite communications. The court noted that the legislative history of both the ECPA and the Communications Act made it clear that "Congress intended 47 U.S.C. § 605 and the ECPA to overlap in addressing satellite piracy." 344 F. Supp.2d at 661, *citing* 132 Cong. Rec. S. 14452-53 (daily ed. Oct. 1, 1986)("The penalties provided for in the [ECPA] are in addition to those which are provided by section [605].") In fact, the DirecTV court noted, the House Report accompanying the 1988 amendments to 47 U.S.C. § 605 specifically referred to the application of 18 U.S.C. § 2511 to satellite television piracy:

> In response to the piracy problem, the Federal Communications Commission has increased enforcement efforts under [47 U.S.C. § 605(a)] and Title 18 U.S. Code Section 2511(1), *each of which* prohibit the

14 - FINDINGS AND RECOMMENDATION

>       unauthorized interception and use of satellite and
>       other radio communications.

H. Rep. No. 887(II) at 14 (1988), *reprinted in* 1988 U.S.C.C.A.N. 5638, 5643 (emphasis added by DirecTV court).

    Defendants point out that DirecTV is the only case in this jurisdiction to deal with the issue, and argue for application of the ECPA's limitations period because, under Delcostello v. Int'l Brotherhood of Teamsters, 462 U.S. 151, 171-72 (1983), borrowing from a federal rather than a state analogue is appropriate "when a rule from elsewhere in federal law clearly provides a closer analogy than available state statutes, and when the federal policies at stake and the practicalities of litigation make that rule a significantly more appropriate vehicle for interstitial lawmaking."

    Defendants argue against the application of the Oregon Cable Services Act, on the ground that it is not a close state law analogue. They argue that unlike the Pennsylvania statute in Kingvision, the Oregon statute does not provide for criminal sanctions, and provides a private cause of action only to a limited class of "cable operators." Kingvision does not allege that it is a cable operator in this case.

    Moreover, defendants argue, the Oregon Cable Services Act provides only a limited remedy of $3,000 to that limited class of cable operators, and permits recovery only of those costs

15 - FINDINGS AND RECOMMENDATION

particular to cable operators such as disconnection or reconnection, service calls, labor and equipment. Defendants argue that it is not merely the goal of a uniform limitations period that supports their position, but also the absence of a close Oregon analogue and the fact that the legislative histories of the ECPA and the Communications Act demonstrate that they were intended to overlap in addressing satellite piracy.

Defendants argue that borrowing the three-year limitations period of the federal Copyright Act involves going farther afield for an analogy than the ECPA, and point out that the Fifth Circuit is the only court to have borrowed the Copyright Act limitations period.

I agree with the <u>DirecTV</u> court's analysis based on the multi-state nature of plaintiff's actions under § 605, and with its conclusion that the ECPA is the most closely analogous statute-- closer than the Copyright Act or the Oregon statute. Because the ECPA was intended to overlap with the Communications Act, the "narrow" exception identified in <u>North Star</u> applies: the state limitations period would "be at odds with the operation of" the ECPA. I conclude that the plaintiff's conduct of simultaneous interstate activities supports this analysis and should preclude the plaintiff from invoking the presumption in favor of a limitations period borrowed from state law, and thereby obtaining a different limitations period in each state in which it conducts

16 - FINDINGS AND RECOMMENDATION

its activities. I recommend, therefore, that the defendants' motion to dismiss be granted.

## Scheduling Order

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due March 16, 2006. If no objections are filed, review of the Findings and Recommendation will go under advisement on that date. If objections are filed, a response to the objections is due March 30, 2006, and the review of the Findings and Recommendation will go under advisement on that date.

Dated this 1st day of March, 2006.

/s/ Dennis James Hubel
Dennis James Hubel
United States Magistrate Judge

17 - FINDINGS AND RECOMMENDATION